IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| Thomas Rodgers and Edward S. Christian, as Trustees of the Dakotas and Western Minnesota Electrical Industry Workers Health and Welfare Fund, and as Trustees of the Dakotas Areawide IBEW-NECA Savings & Retirement Plan; and each of their successors,<br><br>                Plaintiffs,<br><br>-vs-<br><br>Melton Electric Company and John D. Melton d/b/a Melton Electric Company,<br><br>                Defendants. | Case No. 3:13-cv-28<br><br>**ORDER GRANTING MOTION TO VACATE DEFAULT ORDER AND TRANSFERRING CASE TO THE WESTERN DISTRICT OF MISSOURI** |

Before the Court is Defendants Melton Electric Company and John D. Melton d/b/a Melton Electric Company's (hereafter collectively "Melton") motion to vacate default order and/or motion to transfer venue to Missouri.[1] The matter came regularly on for a hearing on April 29, 2014. Plaintiffs appeared through their counsel Amanda Cefalu. John D. Melton appeared via telephone on behalf of himself and Melton Electric Company. Because good cause has been shown, Melton's motion to vacate the default order is GRANTED. The Court further finds that judicial economy and the interests of justice necessitate a transfer of venue, and hereby ORDERS this case transferred to the Western District of Missouri.

I. **BACKGROUND**

This is an action to collect alleged delinquent fringe benefit contributions. On May 6, 2013,

---

[1] Docs. #22 & 25.

1

Melton was served with the summons and complaint in this action.[2] Melton failed to answer the complaint or otherwise appear. On November 5, 2013, Plaintiffs moved for entry of a default order for an accounting.[3] Melton did not respond to the motion or otherwise appear. The Court granted the motion on November 12, 2013, compelling Melton to provide records for an accounting.[4] Melton failed to provide the necessary reports for an audit. On February 3, 2014, Plaintiffs filed a motion for an order to show cause based on Melton's failure to comply with the terms of the default order.[5]

On February 20, 2014, Melton made his first appearance in the case when he contacted the undersigned's chambers regarding the order to show cause hearing set for February 24, 2014. Melton was told to submit a written response, which he did on February 21, 2014.[6] The Court has construed Melton's response as a motion to vacate the default order and/or a request to transfer the case to Springfield, Missouri.

## II. ANALYSIS

### MOTION TO VACATE

Although there is a "judicial preference for adjudication on the merits,"[7] an entry of default under Fed.R.Civ.P. 55(a) may be set aside only for "good cause."[8] To find "good cause", courts

---

[2] Doc. #3.

[3] Doc. #4.

[4] Doc. #8.

[5] Docs. #11 &12.

[6] Doc. #22.

[7] Oberstar v. F.D.I.C., 987 F.2d 494, 504 (8th Cir. 1993).

[8] Fed.R.Civ.p. 55(c).

2

should weigh the excuse or explanation for the default, the existence of a meritorious defense, and the prejudice to the non-defaulting party.[9] Each of these three factors are considered when setting aside an entry of default or a default judgment; however, a lesser showing is required to set aside an entry of default.[10] No default judgment having been entered, Melton is entitled to the more lenient "good cause" standard in considering his motion to vacate the default order.

### A. *Blameworthy or Culpable Conduct*

At the hearing, Melton explained he failed to respond to the complaint because he believed Plaintiffs had no legal basis for pursuing a cause of action against him since he was no longer a signatory on the collective bargaining agreement at issue in this case. From his perspective, this action was entirely unfounded. Melton asserted that he called the local union business manager, Randy Appleby, and asked him to contact the Plaintiffs to tell them he was not under contract. Melton took no further action to respond to the complaint or the allegations contained within the complaint.

Melton's attention was captured when he was served the Court's order to show cause. The order notified Melton that he may be found in contempt if he failed to appear at the hearing set for February 24, 2014. Melton contacted the Court on February 20, 2014, and, at the Court's suggestion, submitted a written response on February 21, 2014. Melton clearly had notice of the litigation; yet he failed to take action until faced with the prospect of a bench warrant if he did not appear. Although Melton might believe that the action is unfounded and he hoped that the case would go

---

[9] Stephenson v. El-Batrawi, 524 F.3d 907, 913 (8th Cir. 2008) (quoting Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 784 (8th Cir. 1998)).

[10] Johnson, 140 F.3d at 783-84 (noting the judicial preference for adjudication on the merits and noting "it is likely that a party who promptly attacks an entry of default, rather than waiting for grant of a default judgment, was guilty of oversight and wishes to defend the case on the merits.").

away if Appleby contacted Plaintiffs on his behalf, Melton failed to act with diligence. While unfamiliar with legal proceedings, Melton is not blameless for his failure to timely appear and/or file an answer prior to the entry of the default order. This factor weighs against granting the motion to vacate.

### B.     *Meritorious Defense*

When Melton submitted a response to the allegations in the complaint, he provided a copy of a letter he sent to the Plaintiffs indicating a desire to terminate the collective bargaining agreement with Local Union 453.[11] He also submitted various letters from Local Union 453 to John Melton/Melton Electric Company requesting that the collective bargaining agreement be opened for negotiations.[12] Melton invites this Court to infer that these letters indicate the absence of a collective bargaining agreement. In contrast, Plaintiffs submitted evidence that Melton continued sending contributions even after he purportedly terminated the collective bargaining agreement.[13] Plaintiffs allege Melton submitted the required fringe benefit reports until August 2012, and assert that the Plan administrator would have returned the money if there was no valid contract.

At this stage of the proceedings, the Court need not resolve the dispute. "The underlying concern is . . . whether there is some possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default."[14] It is plain from the record that Melton has submitted sufficient evidence of a plausible defense. This factor weighs in favor of granting the motion to

---

[11] Doc. #43-3.

[12] Docs. #43-2, 43-4, & 43-5.

[13] Doc. #30-1.

[14] Stephenson, 524 F.3d at 914 (quoting Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988)).

4

vacate.

### C. *Prejudice*

Plaintiffs' prejudice claim is based on the assertion that if the case is reopened, there has been an unnecessary four-to-six month delay. Delay alone or the fact that the defaulting party would be permitted to defend on the merits are insufficient grounds to establish the requisite prejudice.[15] "Setting aside a default must prejudice plaintiff in a more concrete way, such as 'loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion.'"[16] None of those circumstances are present here. Plaintiffs have not shown actual prejudice other than the typical effects a delay might have on proceedings wherein alleged monetary damages accrue each day. Having failed to show the type of prejudice necessary, this factor weighs in favor of granting the motion to vacate.

Although Melton failed to act with diligence in responding to the allegations against him, in light of the judicial preference for adjudication on the merits combined with Melton's submission of a plausible defense and the lack of prejudice to the Plaintiffs, the Court finds good cause has been shown warrant vacating the default order.

## MOTION TO TRANSFER VENUE

Melton has requested that this Court consider transferring the case to the Western District of Missouri because it is a hardship for him to travel to North Dakota. While Melton's proffered reason to transfer is insufficient, the Court finds that judicial economy and convenience considerations necessitate that the case be transferred to the Western District of Missouri.

---

[15] Stephenson, 524 F.3d at 915 (citing Johnson, 14 F.3d at 785).

[16] Johnson, 140 F.3d at 785 (quoting Berthelsen v. Kane, 907 F.2d 617, 621 (6th Cir. 1990)).

5

In an Employee Retirement Income Security Act ("ERISA") action, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found."[17] A court may transfer a case to another district where it might have been brought if such transfer is more convenient for the parties and witnesses or if the interests of justice weigh in favor of the transfer.[18] General venue restrictions are in place to protect the defendant against the risk that a plaintiff will choose an unfair or inconvenient forum in which to litigate.[19]

In addition to the convenience and interest of justice factors found in 28 U.S.C. § 1404(a), a court contemplating a motion to transfer should also "weigh in the balance a number of case-specific factors," using its discretion to adjudicate the motion.[20] However, "courts generally afford great deference to the plaintiff's choice of forum," and "[t]he moving party bears the 'heavy burden of showing that the balance of factors favors' a transfer."[21]

There are two looming questions in this case. The first is whether there is an enforceable agreement between Plaintiffs and Melton. The second is whether unpaid contributions must be made to the Plaintiffs' benefit plans and, if so, in what amounts. By all accounts, Melton and his electric company transacted business solely in Missouri. It appears there were numerous discussions regarding negotiating a new collective bargaining agreement and it is debatable whether the parties

---

[17] 29 U.S.C. § 1132(e)(2).

[18] 28 U.S.C. § 1404(a).

[19] LeRoy v. Great W. United Corp., 443 U.S.173, 183-84 (1979).

[20] Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citing Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

[21] Dakota W. Bank of N.D. v. N. Am. Nutrition Cos., Inc., 284 F.Supp.2d 1232, 1234 (D.N.D. 2003) (citing Hubbard v. White, 755 F.2d 692, 694-95 (8th Cir. 1985), *cert. denied*, 474 U.S. 834 (1985), and quoting Radisson Hotels, Int'l, Inc. v. Westin Hotel Co., 931 F.Supp. 638, 641 (D. Minn. 1996)).

6

entered into an enforceable agreement during the time period in question. It can be surmised that Melton's Missouri-based witnesses and records will be more helpful in deciding the validity of the contract in question than the trustees' witnesses in North Dakota, who are prepared to testify as to the alleged damages owed by Melton. Borrowing a phrase from the general venue statute, the "substantial activity" pertaining to the contract question occurred in the Western District of Missouri.[22]

This determination alone may not constitute a sufficient basis to transfer. While convenience considerations favor the Western District of Missouri on the contract formation question, the question of damages may potentially be litigated in the District of North Dakota with equal or more ease than in the Western District of Missouri. Under 28 U.S.C. § 1404(a), a transfer should be made to a forum that is more convenient, not to one likely to prove equally convenient or inconvenient.[23] In addition to convenience, however, the Court must consider all aspects unique to a case in concluding whether the interests of justice necessitate a transfer, including the consideration of judicial economy.[24]

The interests of justice are tipped in favor of transfer in this case because it is not only where the alleged breach occurred and where Melton resides, but it is also where the property in which Plaintiffs have indicated they intend to move for prejudgment attachment is located. In light of the extraordinary relief sought by way of prejudgment attachment, this Court believes the

---

[22] See 28 U.S.C. § 1391(b)(2).

[23] Van Dusen v. Barrack, 376 U.S. 612, 645-46 (1964).

[24] Nelson v. Soo Line R. Co., 58 F.Supp.2d 1023, 1027 (D.Minn. 1999).

propriety of such relief is best resolved by a court where the property is located. In light of the tenuous connection to North Dakota, the Court finds judicial economy plainly favors litigating this case in Missouri.

## III. DECISION

After weighing the culpability of Melton, the limited delay, the submission of a potentially meritorious defense, and the lack of actual prejudice, the Court finds that "good cause" has been shown to justify vacating the default order. Melton's motion to vacate the default order is **GRANTED**.

The Court further finds that the interests of justice necessitate that the case be transferred from the District of North Dakota to the Western District of Missouri in order to promote judicial economy and for the convenience of a great majority of the witnesses. Melton's motion to transfer venue is **GRANTED**. This Court hereby **ORDERS** the case transferred to the Western District of Missouri.

Dated this 30th day of April, 2014.

/s/ Ralph R. Erickson  
Ralph R. Erickson, Chief Judge  
United States District Court